## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIANNE BULGER and JAY BULGER,<br><br>Plaintiffs,<br><br>v.<br><br>BIOMET, INC., and JOHN DOE 1 – 3 (WITH "JOHN DOE" representing the fictitious names of the entities that 1 designed, 2 manufactured, and 3 distributed the subject medical device and its component parts),<br>Defendants. | Court File No.<br><br>Dkt. No. 17-cv-227<br><br>**COMPLAINT -<br>JURY TRIAL DEMAND** |

### CIVIL COMPLAINT

Plaintiffs, MARIANNE BULGER and JAY BULGER, residing in Westchester County in the State of New York, by and through Plaintiffs' attorneys, DAHAN LAW PLLC, upon information and belief, and at all times hereinafter mentioned, alleges as follows:

### INTRODUCTION AND SUMMARY OF ACTION

1.    For numerous years, Defendants have known that their reverse shoulder replacement device, the comprehensive reverse shoulder system (hereafter, "Biomet Device"), is prone to fail years before its expected life.  They have also known that the implant's metal "ball" and "socket" bearings that make up the shoulder-joint become disengaged, lead to a high fracture rate and may cause serious death or injury.  As a result of these defects, patients that have had the devices implanted including plaintiff MARIANNE BULGER have endured, or will endure, unnecessary pain and suffering; debilitating lack of mobility; inflammation, causing damage or death to surrounding tissue and bone; and a subsequent more difficult revision surgery to replace the faulty devices, giving rise to still more debilitation, a prolonged recovery time, and an increased risk of complications and death from surgery.  But rather than recalling the Biomet

Device upon receiving notice of complaints made to the United States Food and Drug Administration ("FDA") regarding the defects discussed above, or warning physicians and patients of these risks and precautions, Defendants continued to aggressively market the Biomet Device, claiming it was a safe and effective shoulder replacement system. Indeed, Defendants sought to capitalize on the problems with the competitor devices by asserting the superiority of the Biomet.

2.    Plaintiff, MARIANNE BULGER's suffering could easily have been prevented. Plaintiff would not have suffered from unnecessary pain and debilitation, as well as the need to undergo subsequent revision surgery, had Defendants taken the affirmative step of recalling the Biomet Device, when complaints began being made to the FDA and others regarding the Biomet Device's failures, or had Defendants at least warned the orthopedic surgical community and the public of the dangers of the Biomet Device so that those who had the Biomet Device implanted could be medically monitored for signs of the Biomet Device malfunctioning. Plaintiff seeks redress for Plaintiff's injuries.

3.    Plaintiff brings this action under the appropriate state law to be determined by the laws of the choice of law analysis.

<u>**PARTIES**</u>

4.    Plaintiffs MARIANNE BULGER and JAY BULGER are both over the age of majority and are citizens and resident of the State of New York.

5.    Plaintiff Marianne Bulger has been injured due to a defective medical prosthesis manufactured by Defendants.

6.    Defendant, BIOMET, INC., alleges that it is a citizen of the State of Indiana.

7.     Defendant, BIOMET, INC., designed, manufactured, marketed, promoted, and sold the Biomet shoulder system device that is the subject of this lawsuit.

8.     At all times relevant herein, Defendants were the agents of each other, and in doing the things alleged herein, each defendant was acting within the course and scope of its agency and was subject to and under the supervision of its codefendants.

9.     Upon information and belief, at all times herein mentioned, the employees of all Defendants, their subsidiaries, affiliates, and other related entities, as well as the employees of the Defendants' subsidiaries, affiliates, and other related entities, were the agents, servants and employees of Defendants, and at all relevant times, were acting within the purpose and scope of said agency and employment.  Whenever reference in this Complaint is made to any act or transaction of Defendants, such allegations shall be deemed to mean that the principals, officers, employees, agents, and/or representatives of the Defendants committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of Defendants while actively engaged in the scope of their duties.

## JURISDICTION AND VENUE

10.     Defendant alleges this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) by asserting the parties in this action are citizens of different States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11.     That upon information and belief, the defendant BIOMET, INC., was a domestic corporation organized and existing under and by virtue of the laws of the State of New York.

12.     That upon information and belief, the defendant, BIOMET, INC., was a foreign corporation authorized to do business in the State of New York.

13.     That upon information and belief, the defendant, BIOMET, INC., was a foreign corporation doing business in the State of New York without a county in New York designated as its principle place of business.

14.     That upon information and belief, the defendant, BIOMET, INC., was a business entity doing business in the State of New York.

15.     That upon information and belief, the defendant, BIOMET, INC., has transacted business in the State of New York.

16.     That upon information and belief, the defendant, BIOMET, INC., contracted to supply goods and services in the State of New York.

17.     That upon information and belief, the defendant, BIOMET, INC., committed a tortious act within the State of New York.

18.     That upon information and belief, the defendant, BIOMET, INC., committed a tortious act without the State of New York causing injury to person or property within the State.

19.     That upon information and belief, the defendant, BIOMET, INC., has regularly done and solicited business within the State of New York.

20.     That upon information and belief, the defendant, BIOMET, INC., has engaged in a persistent course of conduct in the State of New York.

21.     That upon information and belief, the defendant, BIOMET, INC., derived substantial revenue from goods used or consumed or services rendered in the State of New York.

22.     That upon information and belief, the defendant, BIOMET, INC., expected or should reasonably have expected its tortious conduct to have consequences in the State of New York.

23.     That upon information and belief, the defendant, BIOMET, INC., derived substantial revenue from interstate or international commerce.

24.     That at all pertinent times hereinafter mentioned, upon information and belief, the defendant, BIOMET, INC., owned real property in the State of New York.

25.     That at all times hereinafter mentioned, upon information and belief, the defendant, BIOMET, INC., was engaged in the business of designing, advertising, marketing and selling of medical devices throughout the Unities States of America, and in pursuit of this business, transacted business within the State of New York and contracted to supply goods or services in the State of New York.

26.     That, upon information and belief, the causes of action alleged herein arise from the commission by the defendant, BIOMET, INC., of a tortious act or acts within the State of New York.

27.     That, upon information and belief, the causes of action alleged herein arise from the commission by the defendant, BIOMET, INC., of a tortious act or acts outside the State of New York.

28.     That, upon information and belief, the defendant, BIOMET, INC., regularly does and solicits business, engages in a persistent course of conduct, and derives substantial revenue from the goods used or consumed or services rendered, in the State of New York.

29.     That, upon information and belief, the defendant, BIOMET, INC., expected or should reasonably have expected its tortious act or acts as aforesaid to have consequences in the State of New York, and derives substantial revenue from interstate or international commerce.

30.     The appropriate venue for this case is in the Supreme Court of the State of New York in the County of Westchester where the action was filed prior to its removal by defense

counsel as this lawsuit arises out of the same transactions and occurrences of the medical malpractice lawsuit that was filed on February 16, 2016 prior to this product's liability action that was filed on August 16, 2016.

31.    The lawsuit against the medical providers revolves around the installation of the subject Biomet device in plaintiff MARIANNE BULGER's shoulder on August 16, 2013, the disengagement of the glenosphere of the subject implant, a revision surgery on September 7, 2013 with the exchange of the glenosphere humeral stem, humeral tray and bearing and a periprosthetic humeral shaft fracture requiring an open reduction and internal fixation and the consequences of the failed implant and surgery including but not limited to permanent pain, discomfort, dysfunction, soreness and loss of range of motion.

32.    The subject medical treatment including the installation of the Biomet Device and its subsequent removal was provided in Westchester County by defendants in the medical malpractice action by orthopedic surgeon MICHAEL A. SCHWARTZ, M.D. of WP HOSPITAL PHYSICIAN ASSOCIATES ORTHOPAEDIC SPECIALISTS, LARISSA TEDESCO, PA, WHITE PLAINS HOSPITAL MEDICAL CENTER and BONE AND JOINT ASSOCIATES LLP.

33.    While defense counsel has not yet agreed to remand this case back to the Supreme Court of the State of New York in the County of Westchester where it was filed so that it may be consolidated with the medical malpractice action that was filed before it in said Court, they advised they were considering plaintiffs' request to do so in part to avoid the potential of inconsistent verdicts and a waste of judicial resources if they believe the lawsuits arise out of the same transactions or occurrences, which they clearly do.

34.     The product's liability action and medical malpractice action clearly should be consolidated.  It was plaintiffs intention that they move forward as a single action but were filed separately due to statute of limitations deadlines.

**FACTUAL ALLEGATIONS**
**BIOMET DEVICE**

35.     The subject Biomet comprehensive reverse shoulder system device was developed in order to reconstruct human shoulder joints to restore movement and was allegedly beneficial for patients with rotator cuff tears who have developed arthropathy.  The shoulder joint connects the upper arm (humerus) bone to the patient's frame of the body via the glenoid fossa of the scapula.

36.     These devices were marketed with the claim that they were more effective than the conventional shoulder implant, would improve motion and functionality, would last longer than the alternative products, would not fracture at a high rate and had many advantages over other shoulder replacement implants.

37.     Even as the subject device and its component parts came under scrutiny for their high rates of failure over the years, Defendants continued to falsely advertise the Biomet Device as a superior and safe device, citing biased and misleading studies and data of its success.

38.     Contrary to what Defendants' marketing campaigns suggest, upon information and belief for many years Defendants have known of the risks inherent in its devices, including the Biomet Device which were causing harm in a high number of patients who received them including the FDA had been receiving complaints that the Biomet Devices prematurely failed in some patients, due to component loosening, dislocation, component wear, and fracture, as a result of the design of the device.

39.     Upon information and belief over the years the FDA has received an increasing number of complaints involving patients in the United States that received the Biomet Devices, with a number of these patients requiring complicated, expensive and painful revision surgeries with a prolonged recovery time.  Notwithstanding these complaints, Defendants neither halted sales of the Biomet Device nor warned the public.  Instead, they continue to aggressively market the Biomet Device as safe and effective, even though they were on notice of the large number of complaints received by the FDA.

40.     Defendants' reason to conceal the defect in its Biomet Device is clear.  Shoulder implant sales are important to Defendants, and the Biomet Device is a very profitable product.

41.     Rather than to admit that these popular products had a critical defect that could cause a premature failure, forcing patients to have to undergo another painful surgery, Defendants chose to pursue corporate profits, at the expense of patient safety, and continued to promote, market, and sell the Biomet Device despite the fact that they knew the product was defective.

42.     As a result of the issues with the Biomet Device, Plaintiff has suffered symptoms including pain, swelling, inflammation, and damage to surrounding bone and tissue, and lack of mobility.  As noted above, these symptoms are the result of loosening of the implant, disengagement of the glenosphere, fracture, where the bone around the implant may have broken; dislocation, where two parts of the implant that move against each other are no longer aligned and other causes.

43.     For these reasons, revision surgery is necessary to remove the defective Biomet Device.  Revision surgery presents enormous risks because it is technically more difficult than the original implanting surgery, the patient has an increased risk of complications and death, and

the recovery time is prolonged and more painful than the recovery after the original implanting surgery.

## PLAINTIFF FACTUAL ALLEGATIONS

44.    During all material times, Plaintiffs have been residents of the State of New York.

45.    On August 16, 2013, Plaintiff MARIANNE BULGER underwent a right shoulder reverse total shoulder replacement surgery performed by MICHAEL SCHWARTZ, M.D. at WHITE PLAINS HOSPITAL CENTER in White Plains, NY and received a Biomet comprehensive reverse total shoulder system identified in medical records of Marianne Bulger as 10 x 4 x4 cm metallic unipolar shoulder implant with a 4 x 4 x 1 cm white plastic component with the following inscription: B 44-36 STD 202280 and a 3.5 x 3.5 x 1.0 cm metallic semicircular piece of hardware with an inscription of B 038150 118000-00 MINI.

46.    Subsequent to surgical recovery and thereafter, Plaintiff suffered symptoms including but not limited to increasing pain, discomfort, dysfunction, soreness and loss of range of motion.

47.    Subsequently, on September 7, 2013, Plaintiff was required to undergo revision surgery, which was performed by MICHAEL SCHWARTZ, M.D. at WHITE PLAINS HOSPITAL CENTER to replace the failed Biomet Device.

48.    An employee and/or agent of Defendant provided the Biomet Device to MICHAEL SCHWARTZ, M.D., who implanted the Biomet Device on August 16, 2013, the date of the original right shoulder replacement surgery.

49.    Beyond merely providing the device to the surgeon, agents of Defendants were hired by Defendants to aggressively promote, distribute, and sell the Biomet Device.

50.     Directors, managers, and sales representatives of Defendants received training and education from Defendants, including orthopedic and surgical training, product design rationale for the Biomet Device, education regarding proper use of the tools to implant the Biomet Device, selection of complementary components to the Biomet Device, and training on how to sell the Biomet Device to surgeons over shoulder replacements offered by competitors.

51.     On numerous occasions, Defendants met with orthopedic surgeons, including, on information and belief, with Plaintiff's orthopedic surgeon, to promote the subject Biomet Device.   At some or all of these meetings, a representative or representatives of Biomet were present.   During these meeting, Biomet assured the orthopedic surgeons, including Plaintiff's orthopedic surgeon, that the subject Biomet Device was safe, effective, was the best product on the market, had an excellent track record, would last longer than traditional shoulder implants and had  a low and acceptable failure rate.   Biomet continued to "defend" the subject Biomet Device even after they became aware of numerous and serious complications with it.   Biomet did not reveal (and instead concealed) their knowledge of numerous and serious complications and other "bad data" during their meetings with orthopedic surgeons, including Plaintiff's orthopedic surgeon.

52.     Plaintiff's revision surgery has subjected her to much greater risks of future complications than she had before the revision surgery including a higher risk of fracture or dislocation compared with an original replacement surgery.

53.     Upon information and belief, Defendants were instrumental in educating Plaintiff's Orthopedic Surgeon regarding claimed advantages of the product, addressing the questions of the surgeon.

54.    Had Plaintiff known that the Biomet Device caused injury and had the potential to require revision surgery to remove the device, with no benefit over traditional implants, then Plaintiff would not have chosen the Biomet Device for the implant surgery.

55.    As a direct and proximate result of the implantation of the Biomet Device, Plaintiff has suffered significant harm, including but not limited to physical injury and bodily impairment, debilitating lack of mobility, conscious pain and suffering, loss of earnings, right shoulder disengaged glenosphere, a revision surgery on September 7, 2013 of a right shoulder revision reverse total shoulder replacement with exchange of glenosphere humeral stem, humeral tray and bearing and a periprosthetic humeral shaft fracture requiring an open reduction and internal fixation.  As a result, Plaintiff has sustained and will continue to sustain damages in an amount to be proven at trial.

**FIRST CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY (DESIGN DEFECT)**
**AGAINST ALL DEFENDANTS**

56.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

57.    At all times herein mentioned, Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed the Biomet Device as hereinabove described that was surgically implanted in Plaintiff.

58.    At all times herein mentioned, the Biomet Device was in an unsafe, defective, and inherently dangerous condition for users such as Plaintiff that had the device surgically implanted.

59.    The Biomet Device was in an unsafe, defective, and inherently dangerous condition at the time it left Defendants' possession.

60.    At all times herein mentioned, the Biomet Device was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was designed, produced, manufactured, sold, distributed, and marketed by Defendants.

61.    The Biomet Device's unsafe, defective, and inherently dangerous condition was a cause of injury to Plaintiff.

62.    The Biomet Device failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

63.    Plaintiff's injuries resulted from use of the Biomet Device that was both intended and reasonably foreseeable by Defendants.

64.    At all times herein mentioned the Biomet Device posed a foreseeable risk of danger inherent in the design which greatly outweighed the benefits of that design.

65.    At all times herein mentioned, the Biomet Device was defective and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants.

66.    At all times herein mentioned, the Defendants knew, or should have known, that the Biomet Device was in a defective condition, and was and is inherently dangerous and unsafe.

67.    At the times of the implantations of the Biomet Devices into Plaintiff, the aforesaid product was being used for the purposes and in a manner normally intended, namely for use as a shoulder replacement device.\Defendants, with this knowledge, voluntarily designed their Biomet Devices in a dangerous condition for use by the public and, in particular, Plaintiff.

68.    At all times herein mentioned, the Biomet Devices lacked sufficient utility for any group of users, including Plaintiff.

69.     The Biomet Devices provided no net benefit to any class of patients, including Plaintiff.

70.     Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

71.     Defendants failed to complete adequate pre-market testing and post-market surveillance on the Biomet Devices.

72.     Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed defective products which, when used in their intended or reasonably foreseeable manner, created an unreasonable risk to the health of consumers and to Plaintiff, in particular, and Defendants are therefore strictly liable for the injuries sustained by Plaintiff.

73.     Defendants are strictly liable for Plaintiff's injuries in the following ways:

> (a)     The Biomet Devices as designed, manufactured, sold and supplied by the Defendants, were defectively designed and placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition;

> (b)     Defendants failed to properly market, design, manufacture, distribute supply and sell the Biomet Devices;

> (c)     Defendants failed to adequately test the Biomet Devices; and

> (d)     A feasible alternative design existed that was capable of preventing Plaintiff's injuries.

74.     As a direct and proximate result of Defendants' placement of the defective Biomet Devices into the stream of commerce, Plaintiff experienced and/or will experience severe

harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as an additional revision surgery to replace the device with the increased risks of complications and death from such further surgery. Further, as a result of the foregoing acts and omissions, Plaintiff has suffered and/or will in the future suffer lost wages and a diminished capacity to earn wages.

75.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety of recipients of their products, including Plaintiff's, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting recipients of Defendants' Biomet Devices.  Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff MARIANNE BULGER demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

### SECOND CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY (FAILURE TO WARN)
### AGAINST ALL DEFENDANTS

76.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

77.    Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Biomet Devices.

78.    The Biomet Devices placed into the stream of commerce by Defendants were defective due to inadequate warnings, because Defendants knew or should have known that the

Biomet Devices could fail early in patients and therefore give rise to physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the device with the attendant risks of complications and death from such further surgery, but failed to give consumers adequate warning of such risks.

79.    The Biomet Devices were unreasonably dangerous because they were sold to Plaintiff without adequate warnings regarding, *inter alia,* the propensity of the Biomet Devices to loosen for the glenosphere to become disengaged and/or for a high occurrence of periprosthetic humeral shaft fractures and cause serious pain and necessitate additional surgery.

80.    Further, the Biomet Devices placed into the stream of commerce by Defendants were surgically implanted in a manner reasonably anticipated by Defendants.

81.    Defendants are strictly liable for Plaintiff's injuries in the following ways:

(a)    Defendants failed to warn and place adequate warnings and instructions on Biomet Devices; and

(b)    Defendants failed to provide timely and adequate post-marketing warnings and instructions after they knew of the risk of injury associated with the use of the Biomet Devices.

82.    As a direct and proximate result of Defendants' placement of the defective Biomet Devices into the stream of commerce, Plaintiff experienced and/or will experience severe harmful effects including but not limited to partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as an additional revision surgery to replace the device with the increased risks of complications and

death from such further surgery. Further, as a result of the foregoing acts and omissions, Plaintiff has suffered and/or will in the future suffer lost wages and a diminished capacity to earn wages.

83.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety of recipients of their products, including Plaintiff's, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting recipients of Defendants' Biomet Devices.  Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff MARIANNE BULGER demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**THIRD CAUSE OF ACTION**
**MANUFACTURING DEFECT AND FAILURE TO**
**ADHERE TO QUALITY CONTROLS**
**AGAINST ALL DEFENDANTS**

84.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

85.     The Biomet Devices were defectively manufactured because the foreseeable risks of mechanical malfunction and failure outweigh the benefits associated with the Biomet Devices.

86.     The Biomet Devices were designed and/or manufactured in a manner violative of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 321 *et seq.*, and the Medical Devices Amendment thereto (hereafter "FDCA").  The facilities or controls used by defendants in the manufacture, testing, packing, storage, or installation of the Biomet Devices were not in conformity with applicable requirements of the FDCA.

87.    The Biomet Devices were expected to and did reach the Plaintiff without substantial change or adjustment to their mechanical function.

88.    Defendants knew or should have known of the manufacturing defects and the risk of serious bodily injury that exceeded the benefits associated with the Biomet Devices.

89.    Furthermore, the Biomet Devices and their defects presented an unreasonably dangerous risk beyond what the ordinary consumer would reasonably expect.

90.    The Biomet Devices were defective due to inadequate warnings or instruction because Defendants knew or should have known that the Biomet Devices created a high risk of bodily injury and serious harm.  Defendants failed to adequately and timely warn consumers of this risk.

91.    The Biomet Devices are inherently dangerous for its intended use due to a manufacturing defect or defects and improper functioning.  Defendants are therefore strictly liable to the Plaintiff for their breach of duty to the Plaintiff.

92.    As a direct and proximate result of Defendants' wrongful conduct, the Plaintiff has sustained and will continue to sustain severe physical injuries, and the Plaintiff has suffered and will continue to suffer severe emotional distress, mental anguish, economic losses and other damages for which she is entitled to compensatory damages in an amount to be proven at trial.

WHEREFORE, Plaintiff MARIANNE BULGER demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## FOURTH CAUSE OF ACTION
**BREACH OF EXPRESS WARRANTY
AGAINST ALL DEFENDANTS**

93.     Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

94.     Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Biomet Devices.

95.     Defendants expressly warranted that the Biomet Devices were safe and effective shoulder replacement systems and that they would last longer than a traditional implant and was thus appropriate for patients.

96.     Indeed, as set forth in detail above, Defendants made numerous representations about the quality, safety, effectiveness and expected lifetime of the Biomet Devices which form express warranties.

97.     The Biomet Devices placed into the stream of commerce by Defendants did not conform to these express representations because they failed early thereby giving rise to unnecessary physical injury, pain and suffering, debilitation, and the need for a revision surgery to replace the Biomet Devices with the attendant risks of complications and death from such further surgery.

98.     As a direct and proximate result of Defendants' breach of express warranties regarding the safety and effectiveness of the Biomet Devices, Plaintiff experienced and/or will experience significant damages, including but not limited to physical injury, economic loss, pain and suffering, and the need for further surgery to replace the faulty Biomet Device, and will continue to suffer such damages in the future.

99.    In taking the actions and omissions that caused these damages, Defendants were guilty of malice, oppression and fraud, and Plaintiff is therefore entitled to recover punitive damages.

WHEREFORE, Plaintiff MARIANNE BULGER demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**FIFTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**AGAINST ALL DEFENDANTS**

100.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

101.    Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Biomet Devices.

102.    At the time Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Biomet Devices, Defendants knew the use for which the Biomet Devices were intended, and impliedly warranted the Biomet Devices to be of merchantable quality.

103.    Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether the Biomet Devices were of merchantable quality.

104.    Contrary to Defendants' implied warranties, the Biomet Devices were not of merchantable quality or safe for the ordinary purposes for which they were to be used, because the Biomet Devices was unreasonably dangerous and/or not reasonably fit for its intended, anticipated or reasonably foreseeable use as described above.

105.    As a direct and proximate result of Defendants' breach of implied warranties regarding the safety and effectiveness of the Biomet Devices, Plaintiff experienced and/or will experience significant damages, including but not limited to physical injury, economic loss, pain and suffering, and the need for further surgery to replace the faulty device, and will continue to suffer such damages in the future.

106.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety of recipients of their products, including Plaintiff's, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting recipients of Defendants' Biomet Devices. Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff MARIANNE BULGER demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

### SIXTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
### AGAINST ALL DEFENDANTS

107.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

108.    Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Biomet Devices.

109.     At the time Defendants designed, manufactured, tested, marketed and distributed into the stream of commerce the Biomet Devices, Defendants knew the use for which the Biomet Devices were intended, and impliedly warranted the Biomet Devices to be of safe for such use.

110.     Plaintiff reasonably relied upon the skill and judgment of Defendants as to whether the Biomet Devices were safe for their intended use.

111.     Contrary to Defendants' implied warranties, the Biomet Devices were not of safe for their intended use or fit for the particular purpose for which they were designed, manufactured, tested, distributed or sold – for use and implantation as a total shoulder replacement system, because the Biomet Devices were unreasonably dangerous and/or not reasonably fit for their intended, anticipated or reasonably foreseeable use as described above.

112.     As a direct and proximate result of Defendants' breach of implied warranties regarding the safety and effectiveness of the Biomet Devices, Plaintiff experienced and/or will experience significant damages, including but not limited to physical injury, economic loss, pain and suffering, and the need for further surgery to replace the faulty device, and will continue to suffer such damages in the future.

113.     Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety of recipients of their products, including Plaintiff's, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting recipients of Defendants' Biomet Devices. Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff MARIANNE BULGER demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**SEVENTH CAUSE OF ACTION**
**NEGLIGENCE**
**AGAINST ALL DEFENDANTS**

114.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

115.    Defendants had a duty to exercise reasonable care in designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and/or distribution of the Biomet Devices into the stream of commerce, including a duty to assure that the device would not cause those who had it surgically implanted to suffer adverse harmful effects from it.

116.    Defendants failed to exercise reasonable care in designing, researching, manufacturing, marketing, supplying, promoting, sale, testing, quality assurance, quality control, and/or distribution of the Biomet Devices into interstate commerce in that Defendants knew or should have known that those individuals that had the Biomet Devices surgically implanted were at risk for suffering harmful effects from it, including but not limited to, partial or complete loss of mobility, loss of range of motion, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for a revision surgery to replace the device with the increased risks of complications and death from such further surgery.

117.    The negligence of Defendants, their agents, servants, and/or employees,  included but was not limited to the following acts and/or omissions:

(a)     Negligently designing the Biomet Devices such that the glenosphere would disengage from said device;

(b)     Negligently designing the Biomet Devices in such a way that it is subject to a high rate of fractures of the component parts and/or the humeral shaft;

(c)     Designing, manufacturing, producing, creating, and/or promoting the Biomet Devices without adequately, sufficiently, or thoroughly testing it, including both pre-market testing and post-market surveillance;

(d)     Not conducting sufficient testing programs to determine whether or not the aforesaid Biomet Devices was safe for use;

(e)     Not conducting sufficient testing programs to determine whether or not the Biomet Devices did not loosen and become disengaged;

(f)      Selling the Biomet Devices without making proper and sufficient tests to determine the dangers to its users;

(g)     Negligently failing to adequately and correctly warn Plaintiff or Plaintiff's physicians, hospitals and/or healthcare providers of the dangers of Magnum Device, including:

   (1)     Negligently failing to warn of an increased risk of disengagement of component parts or fractures;

   (2)     Negligently failing to warn of an increased risk of premature failure resulting in necessary revision surgery;

   (3)     Negligently failing to warn of an increased risk of damage to surrounding tissue, bone, and/or nerves.

(h)     Negligently failing to recall their dangerous and defective Biomet Devices at the earliest date that it became known that the device was, in fact, dangerous and defective;

(i)     Failing to provide adequate instructions regarding safety precautions to be observed by surgeons who would reasonably and foreseeably implant the Biomet Devices into their patients;

(j)     Negligently advertising and recommending the use of the Biomet Devices despite the fact that Defendants knew or should have known of its dangerous propensities;

(k)     Negligently representing that the Biomet Devices was safe for use for its intended purpose, when, in fact, it was unsafe;

(l)     Negligently manufacturing the Magnum Device in a manner which was dangerous to those individuals who had it implanted;

(m)     Negligently designing the Biomet Devices in a manner which was dangerous to those individuals who had it implanted;

(n)     Defendants under-reported, underestimated and downplayed the serious dangers associated with the Biomet Devices;

(o)     Failed to use due care in designing and manufacturing the Biomet Devices so as to allow increased risk of fractures;

(p)     Failed to accompany their product with proper warnings;

(q)     Failed to accompany their product with proper instructions for use;

(r)    Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the Biomet Devices; and

(s)    Were otherwise careless and/or negligent.

118.    Despite the fact that Defendants knew or should have known that the Biomet Devices caused harm to individuals that had the device surgically implanted, Defendants continued to market, manufacture, distribute and/or sell the Biomet Devices.

119.    Defendants knew or should have known that consumers such as Plaintiff would suffer foreseeable injury, and/or be at increased risk of suffering injury as a result of Defendants' failure to exercise ordinary care, as set forth above.

120.    Defendants' negligence was the proximate cause of Plaintiff's physical, mental and emotional injuries and harm, and economic loss which Plaintiff has suffered and/or will continue to suffer.

121.    By reason of the foregoing, Plaintiff experienced and will continue to experience severe harmful effects as a result of the Defendants' negligence as set forth above.

122.    Further, as a result of the foregoing acts and omissions, Plaintiff has suffered and/or will in the future suffer lost wages and a diminished capacity to earn wages.

123.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety of recipients of their products, including Plaintiff's, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting recipients of Defendants' Biomet Devices. Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff MARIANNE BULGER demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**EIGHTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
**AGAINST ALL DEFENDANTS**

124.    Plaintiffs incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

125.    Defendants supplied false information to the public, to Plaintiff and/or to Plaintiff's physicians regarding the high-quality, safety and effectiveness of the Biomet Devices. Defendants provided this false information to induce the public, Plaintiff and/or Plaintiff's physicians to purchase and implant a Biomet Devices.

126.    Defendants knew or should have known that the information they supplied regarding the purported high-quality, safety and effectiveness of the implant would induce Plaintiff and/or Plaintiff's physicians to purchase and use a Biomet Devices was false and misleading.

127.    Defendants were negligent in obtaining or communicating false information regarding the purported high-quality, safety and effectiveness of the Biomet Devices.

128.    Plaintiff and/or Plaintiff's physicians relied on the false information supplied by Defendants to Plaintiff's detriment by causing the Biomet Devices to be purchased and implanted in Plaintiff.

129.    Plaintiff and/or Plaintiff's physicians were justified in their reliance on the false information supplied by Defendants regarding the purported high-quality, safety and effectiveness of the Biomet Devices.

130.    As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff experienced and/or will experience significant damages, including but not limited to permanent physical injury, economic loss, pain and suffering and the need revision surgery to repair the physical damage to Plaintiff caused by the Biomet Devices.

131.    Defendants' conduct, as described above, was extreme and outrageous. Defendants risked the safety of recipients of their products, including Plaintiff's, with knowledge of the safety and efficacy problems and suppressed this knowledge from the general public. Defendants made conscious decisions not to redesign, re-label, warn or inform the unsuspecting recipients of Defendants' Biomet Devices. Defendants' outrageous conduct warrants an award of punitive damages.

WHEREFORE, Plaintiff MARIANNE BULGER demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## NINTH CAUSE OF ACTION
## VIOLATION OF CONSUMER FRAUD LAW
## AGAINST ALL DEFENDANTS

132.    Plaintiffs incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows:

133.    Defendants unfairly, unconscionably, and deceptively advertised, marketed, sold, and represented the Biomet Devices as high-quality, safe and effective shoulder replacement system to Plaintiff and/or Plaintiff's physicians.

134.    Before they advertised, marketed, sold and represented the Biomet Devices that was implanted in Plaintiff, Defendants knew or should have known of the unreasonable dangers and serious health risks that they posed to patients like Plaintiff.

135.    Plaintiff purchased and used the Biomet Devices for personal use and thereby suffered ascertainable losses as a result of Defendants' actions in violation of the consumer protection laws.

136.    Had Defendants not engaged in the deceptive conduct described herein, Plaintiff would not have purchased and/or paid for the Biomet Devices, and would not have incurred related medical costs and injury.

137.    Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, moneys from Plaintiff for the Biomet Devices that would not have been paid had Defendants not engaged in unfair and deceptive conduct.

138.    Unfair methods of competition or deceptive acts or practices that are proscribed by law, include the following: (a) Representing that goods or services have characteristics, ingredients, uses, benefits or quantities that they do not have; (b) Advertising goods or services with the intent not to sell them as advertised; and (c) Engaging in fraudulent or deceptive conduct that creates a likelihood of confusion or misunderstanding.

139.    Plaintiff was injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative effect of Defendants' conduct directed at patients, physicians and consumers was to create demand for and sell the Biomet Devices. Each aspect of Defendants' conduct combined to artificially create sales of the Biomet Devices.

140.    Defendants have a statutory duty to refrain from unfair or deceptive acts or trade practices in the design, development, manufacture, promotion and sale of the Biomet Devices.

141.    Had Defendants not engaged in the deceptive conduct described above, Plaintiff would not have purchased and/or paid for the Biomet Devices, and would not have incurred related medical costs.

142.    Defendants' deceptive, unconscionable, or fraudulent representations and material omissions to patients, physicians and consumers, including Plaintiff, constituted unfair and deceptive acts and trade practices in violation of the state consumer protection statutes listed.

143.    Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts, or trade practices in violation of state consumer protection statutes.

144.    Defendants have engaged in unfair competition or unfair or deceptive acts or trade practices or have made false representations in violation of the New York State, Indiana State and Federal statutes, regulations, laws and consumer protection laws and rules.

145.    Under the pertinent statutes, laws, rules, regulations to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Defendants are the suppliers, manufacturers, advertisers, and sellers, who are subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

146.    Defendants violated the statutes that were enacted in these various states to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, by knowingly and falsely representing that the Device was fit to be used for the purpose for which it was intended, when in fact the Biomet Devices were defective and dangerous, and by other acts alleged herein. These representations were made in uniform promotional materials.

147.    The actions and omissions of Defendants alleged herein are uncured or incurable deceptive acts under the statutes enacted in the states to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

148.    Defendants had actual knowledge of the defective and dangerous condition of the Biomet Devices and failed to take any action to cure such defective and dangerous conditions.

149.    Plaintiff and the medical community relied upon Defendants' misrepresentations and omissions in determining which shoulder implant device to use and recommend.

150.    Defendants' deceptive, unconscionable or fraudulent representations and material omissions to patients, physicians and consumers, constituted unfair and deceptive acts and practices.

151.    By reason of the unlawful acts engaged in by Defendants, and as a direct and proximate result thereof, Plaintiff has suffered ascertainable losses and damages.

152.    As a direct and proximate result of Defendants' violations of the states' consumer protection laws, Plaintiff has sustained economic losses and other damages and is entitled to statutory and compensatory, damages in an amount to be proven at trial.

153.    As specifically described in detail above, Defendants knew that the Biomet Devices subjected patients to early failure, painful and harmful physical reactions, death of tissue, bone loss and the need for explants and revision surgery.

154.    As a direct and proximately result of Defendants' representations, Plaintiff has experienced and/or will experience significant damages, including but not limited to permanent physical injury, economic loss, pain and suffering and the need for revision surgery to repair the physical damage to Plaintiff caused by the Biomet Devices.

WHEREFORE, Plaintiff MARIANNE BULGER demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## TENTH CAUSE OF ACTION
## LOSS OF CONSORTIUM
## AGAINST ALL DEFENDANTS

155.    Plaintiffs incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

156.    That on August 16, 2013 through the present the plaintiff, JAY BULGER, was and still is the husband of MARIANNE BULGER whom he was and still is living with as her husband and whom he provides for.

157.    That as a result of foregoing accident, this plaintiff, JAY BULGER, has been denied the love, society, aid, companionship, support and consortium of his wife and will be so denied in the future; that by reason of the foregoing, the plaintiff, JAY BULGER, has become obligated for hospital, medical and miscellaneous expenses in an effort to alleviate his wife's pain and suffering and will be so obligated in the future.

158.    That by reason of the foregoing the plaintiff, JAY BULGER, has suffered monetary damages for pain and suffering, medical bills, lost earnings and a loss of enjoyment of life, in a sum that exceeds the jurisdictional limits of all lower Courts, which would otherwise have jurisdiction of this matter.

WHEREFORE, Plaintiff MARIANNE BULGER demands judgment against Defendants for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendants as follows:

1.    Economic and non-economic damages in an amount in excess of $75,000 as provided by law and to be supported by the evidence at trial;

2.      For compensatory damages according to proof;

3.      For punitive damages;

4.      For an award of attorneys' fees and costs;

5.      For prejudgment interest and the costs of suit; and

6.      For such other and further relief as this Court may deem just and proper.


Dated: White Plains, New York
       March 30, 2017

                                        **DAHAN LAW PLLC**

                                        By:_____
                                            David M. Dahan
                                            158 Grand Street
                                            White Plains, NY 10601
                                            david@ddahanlaw.com
                                            (844) 324-2647 Tel./Fax.


Michael T. O'Leary
Law Office of Michael T. O'Leary, PLLC
151 Broadway
Hawthorne, NY 10532
Tel (914) 495-3042
Fax (914) 495-3051
MOLearylawyer@gmail.com

*Attorneys for Plaintiffs*
*MARIANNE BULGER and JAY BULGER*

## DEMAND FOR JURY TRIAL

The Plaintiffs demand a jury trial on all claims so triable IN THIS CIVIL ACTION, as

provided by Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: White Plains, New York
        March 30, 2017

                                        **DAHAN LAW PLLC**

                                        By:_____
                                            David M. Dahan
                                            158 Grand Street
                                            White Plains, NY 10601
                                            david@ddahanlaw.com
                                            (844) 324-2647


Michael T. O'Leary
Law Office of Michael T. O'Leary, PLLC
151 Broadway
Hawthorne, NY 10532
Tel (914) 495-3042
Fax (914) 495-3051
MOLearylawyer@gmail.com

*Attorneys for Plaintiffs*
*MARIANNE BULGER and JAY BULGER*

## CERTIFICATE OF SERVICE

It is hereby certified that on March 30, 2017, the undersigned electronically filed the

foregoing **COMPLAINT – JURY TRIAL DEMAND** with the Clerk of Court using the

CM/ECF system, which will send notification of such filing to the following at their e-mail

addresses on file with the Court:

Renee Gallagher, Esq.
McCARTER & ENGLISH, LLP
245 Park Avenue, 27th Floor
New York, New York 10167
Telephone: (212) 609-6800
Fax: (212) 414-0121
Email: rgallagher@mccarter.com

*Counsel for Defendant*

Dated this 30th day of March 2017 at White Plains, New York.

_____

David M. Dahan

-34-